IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-30330
Summary Calendar
_____

IN THE MATTER OF:  PATRICIO H. MUJICA; VERONICA G. MUJICA,

Debtors.

PATRICIO H. MUJICA
VERONICA G. MUJICA,

Defendants-Appellants,

versus

JOAN B. PARMELEE, TRUSTEE,

Plaintiff-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Louisiana
_____

(93-CV-0261)
September 11, 1995

Before HIGGINBOTHAM, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

     Patricio and Veronica Mujica appeal from a ruling of the

district court ordering them to deposit certain sums with the

Trustee, Joan Parmelee.  We affirm.

I.  Limitations

_____

     [*]Local Rule 47.5 provides:  "The publication of opinions
that have no precedential value and merely decide particular
cases on the basis of well-settled principles of law imposes
needless expense on the public and burdens on the legal
profession."  Pursuant to that Rule, the Court has determined
that this opinion should not be published.

The Mujicas first contend that the two-year period of limitations contained in 11 U.S.C. § 549(d)(1) (1988) bars the Trustee's action.  The district court rejected this argument, and exercising de novo review, we agree with the court.

§ 549(d)(1)'s limitations period applies only to actions brought under § 549.  In this case, the district court determined that the Trustee had sued under 11 U.S.C. §  542 (1988).  The Mujicas' argument that the Trustee should have brought a § 549 action implicates the merits of the Trustee's claim, not the applicable limitations period; had the Trustee sued under the wrong statute, she would have failed on the merits.  No period of limitations bars this suit.

II.  Property of the Estate

 The district court held that the funds at issue were pre-petition "property of the estate" under the bankruptcy laws. Reviewing de novo, we agree.

The bankruptcy and district courts reasoned as follows. When the Mujicas filed Chapter 7, the stock in Louisiana Neurosurgical Corporation, owned via the conduit of Mujica and Porché, Inc., became property of the estate.  In addition, all "[p]roceeds, products, offsprings, rents, or profits" from the stock also became property of the estate.  11 U.S.C. §  541(a)(6) (1988).  The Mujicas's ownership of LNC stock entitled them to that portion of LNC's accounts receivable corresponding to Dr. Mujica's earnings for the corporation, minus certain corporate expenses.  In so holding, the courts below presumably interpreted

2

LNC's certificate of incorporation, its bylaws, and its day-to-day business operations, as well as state corporation law. The bankruptcy and district courts held, in other words, that the Mujicas occupied the same position that they would have had no intermediate corporate structure existed, and had Dr. Mujica performed services for consumers and billed them directly. At the moment they petitioned for bankruptcy, the Mujicas' stock ownership entitled them to the portion of LNC's accounts receivable corresponding to the pre-petition medical services that Dr. Mujica had performed on behalf of LNC, for which LNC would bill the consumers. Because the entitlement to the value of pre-petition services sprang from the Mujica's ownership in the LNC stock, it became property of the estate.

The Mujicas only argument with the above reasoning is that because at the time of the petition the accounts receivable belonged in form to LNC, not to the Mujicas, the accounts were not property of the estate. This argument turns on the accuracy of the bankruptcy court's holding that LNC's certificate of incorporation, bylaws, and daily practice, when construed according to state corporation law, gave the Mujicas a vested interest in the portion of the funds generated from LNC's accounts receivable corresponding to the pre-petition services that Dr. Mujica performed. But the Mujicas have not attacked this holding on appeal. Their argument thus amounts to the blanket contention that a debtor's interest in funds deriving from the accounts receivable of a corporation in which the debtor

3

owns stock may never constitute proceeds or profits of the stock, even if the corporation's structure and state law purport to grant the debtor a vested right to these funds. The Mujicas, however, cite no cases on point, and existing authority suggests otherwise. See, e.g., In re McDaniel, 141 B.R. 438, 439-40 (Bankr. N.D. Fla. 1992) (holding that a percentage of a professional firm's gross fees due to the debtor in return for the debtor's pre-petition sale of his stock to the firm's remaining members constituted property of the estate); In re Bernheim, 62 B.R. 739, 742-43 (Bankr. D.N.J. 1986) (holding that post-petition profits received on stock owned at the time of the petition constitute property of the estate).

In re Newman, 875 F.2d 668 (8th Cir. 1989), does not help the Mujicas. In Newman, the truck at issue was not property of the estate because state partnership law gave the debtor "no interest [in the truck] aside from his right to demand his individual partner's share." 875 F.2d at 671. In this case, the debtors' right to demand their share, in funds generated from corporate accounts receivable instead of partnership profits, is the subject of the Trustee's lawsuit.

We affirm the holding below that the funds at issue constituted property of the estate.

III. Calculation of the Accounts Receivable

We also affirm the lower courts' calculations of the value of the Mujicas' stock. We review these calculations for abuse of discretion.

4

Contrary to the Mujicas' contention, the bankruptcy court did net the gross receivables by corporate expenses, and deducted $2110.70 per month over the first four post-petition months. In addition, the bankruptcy court relied on records of checks to LNC during the first three-and-one-half months after the petition to calculate what portion of LNC's accounts receivable corresponded to charges generated by Dr. Mujica's pre-petition services. Regarding the certificate of deposit, the bankruptcy court used straightforward calculations based on bank records documenting the value of the deposit and LNC's overall indebtedness to conclude that LNC used pre-petition funds to build equity on the CD.

The Mujicas do not argue that the lower courts' calculations lacked support in the documentary evidence. They contend instead that the testimony of Drs. Mujica and Porché contradicted the evidence upon which the courts below relied. This court does not sit to resolve conflicts in evidence, especially when such conflicts involve the credibility of oral testimony. Ample evidence supported the findings of the bankruptcy and district courts.

Finally, we affirm that the district court had jurisdiction to correct the erroneous calculations of the bankruptcy court. Bankruptcy Rule 7502 provides that Fed. R. Civ. P. 52 applies in adversary proceedings like the case at bar. Nothing in the language of Rule 52 supports the Mujicas arguments as to an

"unequivocal error" standard or a lack of jurisdiction in the district court.

AFFIRMED.